# In the United States Court of Federal Claims

Case Nos. 09-265C & 09-882C
FOR PUBLICATION
Filed: April 16, 2013

* * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| | * | |
| **EXXON MOBIL CORPORATION**, | * | 28 U.S.C. § 455(a), 28 U.SC. § |
| | * | 455(a), *Shell Oil v. United States*, |
| *Plaintiff,* | * | 672 F.3d 1283 (Fed. Cir. 2012), |
| | * | *Liteky v. United States*, 510 U.S. 540 |
| v. | * | (1994), *In re Kansas Public* |
| | * | *Retirement System*, 85 F.3d 1353 |
| **THE UNITED STATES**, | * | (8th Cir. 1996) |
| | * | |
| *Defendant.* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

*William S. Foster, Jr.*, Baker Botts LLP, Washington D.C., for Plainitff.

 *Kenneth Woodrow*, Trial Attorney, with whom were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Frank E. White, Jr.,* Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

## OPINION and ORDER

**SMITH, Senior Judge.**

 The Government seeks reassignment of two consolidated cases involving the reimbursement of environmental cleanup costs near ExxonMobil's facilities in Baton Rouge, Louisiana and Baytown, Texas. *Shell,* a related case, was reassigned to Judge Wheeler based on a financial conflict of interest pursuant to 28 U.S.C. § 455(b)(4).[1] The Government filed a Motion for Recusal pursuant to § 455(a), asserting that the financial conflict in *Shell* creates an appearance of partiality in the present proceeding because the cases are "directly related" under RCFC 40.2(a)(2)(B).[2] This court rule is a rule of judicial efficiency so that cases that have similar kinds of facts and related rules of law can be decided by the judge who already has developed a working knowledge of that special area. The related cases do not affect each other as to decisions unless the cases are consolidated, which is not the case between *Shell* and

---

[1] See *Shell Oil v. United States*, 108 Fed. Cl. 422 (2013).

[2] The Government originally filed, in the alternative, a Motion to Transfer the cases to Judge Wheeler pursuant to RCFC 40.2(a)(3)(A)(iv) and 40.1(b) and (c). Judge Wheeler issued the *Shell* decision on January 14, 2013. Thus, at oral argument on February 1, 2013 this Court stated that it understood that this motion has now been withdrawn as moot. Neither party objected. Therefore, the Court does not consider the merits of the Government's Motion to Transfer.

*ExxonMobil*. Plaintiff, ExxonMobil, argues in response that the financial conflict of interest in *Shell* is too remote to create an appearance of partiality in the present proceeding.

Accordingly, the Court must now consider the relationship between § 455(b)(4) and § 455(a) of the federal recusal statute. After briefing and oral argument, the Court hereby **DENIES** the Government's Motion for Recusal.

## I. Background of Case

This underlying action arises out of contracts between the United States and ExxonMobil's predecessor companies for the production and supply of aviation gasoline ("avgas") during World War II. Each of the contracts contained the following "Taxes" clause in which the Government agreed to pay:

> [A]ny new or additional taxes, fees, or charges, other than income, excess profits, or corporate franchise taxes, which Seller may be required by any municipal, state, or federal law in the United States or any foreign country to collect or pay by reason of the production, manufacture, sale or delivery of the [avgas].

ExxonMobil, pursuant to orders from the Louisiana Department of Environmental Quality in 1987 and the Texas Natural Resources Conservation Commission, predecessor to the current Texas Commission on Environmental Quality in 1995, conducted environmental cleanup of contaminated areas near its oil refineries in Baton Rouge, Louisiana and Baytown, Texas. Finding the "Taxes" clause to include the environmental cleanup costs, ExxonMobil sought reimbursement from the Government by filing the appropriate documents with the U.S. General Services Administration.

### A. Procedural History

The Government refused to reimburse ExxonMobil, and on March 18, 2009, ExxonMobil filed a complaint with this court to recover cleanup costs for the Baytown, Texas site. At that time, this Court was presiding over a case involving the same clause in a separate avgas contract. *Shell Oil v. United States,* 80 Fed. Cl. 411 (2008). Accordingly, ExxonMobil filed with its complaint a Notice of Directly Related Case pursuant to RCFC 40.2(a)(2)(B), and the case was assigned to this Court. On December 12, 2009, ExxonMobil filed a second complaint to recover cleanup costs for the Baton Rouge site. This case was also assigned to this Court, and the two ExxonMobil cases have since been consolidated.

On October 31, 2011, this Court granted ExxonMobil's motion for partial summary judgment on liability, finding that the "Taxes" clause in the avgas contracts encompasses the cleanup costs for the Baytown and Baton Rouge sites. *ExxonMobil v. United States,* 101 Fed. Cl. 576 (2011).

### B. Shell Oil

In *Shell*, four oil companies—Shell Oil Company ("Shell"), Atlantic Richfield Company ("Arco"), Texaco, Inc. ("Texaco"), and Union Oil Company ("Union Oil")—filed suit in this

Court, seeking reimbursement from the Government for CERCLA cleanup costs. On February 2, 2008, this Court determined that the Government was liable for the cleanup costs based on contract language identical to the clause at issue in this case, and on October 30, 2009, this Court entered final judgment awarding the sum of $87,344,345.70 collectively to the four oil companies. On November 16, 2009, [Judge Smith] informed the parties that when he was entering final judgment he realized that his wife had inherited 97.59 shares of stock in Chevron Corporation, the parent corporation for Texaco and Union Oil. On December 10, 2009, the Government filed a motion for relief from judgment and for recusal pursuant to RCFC 60(b). Before this Court had a chance to rule on the motion, the Government appealed this Court's final judgment entered on October 30, 2009 to the U.S. Court of Appeals for the Federal Circuit. The Federal Circuit subsequently remanded the case to this Court to allow this Court to rule on the Government's motion.

On remand, this Court determined that a financial conflict existed with respect to Texaco and Union Oil. Accordingly, this Court vacated the prior decisions, *sua sponte* severed Texaco and Union Oil from the case, reissued the prior decisions with respect to Shell Oil and Arco, and entered final judgment against the Government in the amount of $68,849,505.88.

March 7, 2012, the Federal Circuit vacated the final judgment and prior decisions and remanded the case with instructions to reassign the case to a different judge. The Federal Circuit found that recusal was mandatory under 28 U.S.C. § 455(b)(4) and vacatur was the appropriate remedy "where, as here, there is substantial overlap with respect to the issues involved in the remaining parties' claims, and the matter has been considered jointly throughout the proceedings." *Shell Oil Co. v. United States*, 672 F.3d 1283, 1291 (Fed. Cir. 2012).

## II. Discussion

On January 3, 2013—over a year after this Court's liability determination—the Government filed the instant motion for recusal and random reassignment pursuant to 28 U.S.C. § 455, claiming that recusal is necessary under § 455(a) because the financial conflict of interest that tainted the *Shell* proceedings extends to this case—or any "directly related proceeding." On the facts of this case, the Government emphasizes that this Court "relied specifically upon *Shell*" in granting ExxonMobil's motion for partial summary judgment as to liability and "explicitly linked the *Exxon* proceedings to the *Shell* proceedings" in determining that this case is "directly related" to *Shell* under RCFC 40.2(a)(2)(B). Def. Brief at 8.

Therefore, the question before the Court is whether recusal under § 455(b)(4), in a directly related case, requires recusal in the current proceeding under § 455(a). For the reasons discussed below, this Court holds that it does not.

### A. Timeliness

ExxonMobil argues that this Court should deny the Government's recusal motion because it is untimely. Specifically, it contends that the Government first learned of the financial conflict in a conference held on November 16, 2009 yet proceeded to participate in extensive discovery and pre-trial motions, including summary judgment briefing on liability issues.

3

Accordingly, it argues that granting the Government's motion would represent a waste of valuable judicial resources and encourage a type of procedural gamesmanship.

In response, the Government argues that the Federal Circuit's decision in *Shell* is the factual basis for its motion and, therefore, it could not have filed its motion until after the Federal Circuit issued its decision in March 2012. Further, the Government argues that any delay in filing its motion was due to its hope that the Court would act on its own. Finally, it notes that § 455(a) contains "no explicit timeliness requirement." Def. Reply at 2.

While this Court does not rely on timeliness in reaching its decision, it is aware that courts have required recusal motions to be made "at the first opportunity after discovery of the facts requiring disqualification." *Hoffenberg v. United States,* 333 F.Supp. 2d 166 (S.D. N.Y. 2004).[3] As explained by the Second Circuit, "[p]rompt motions afford the judge an opportunity to assess the merits of the application before taking further steps that may be inappropriate for the judge to take and it avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings." *In re International Business Machines Corporation*, 45 F.3d 641, 643 (2d Cir. 1995). Thus, while § 455(a) does not contain an explicit timeliness requirement, courts have denied motions as untimely. *See Apple v. Jewish Hosp. & Med, Ctr.*, 829 F.2d 326, 334 (2d Cir. 1987) (denying the motion as untimely where the movant delayed two months); *In re Kansas Public Retirement System*, 85 F.3d 1353, 1360 (8th Cir. 1996) (finding the motion untimely and "interposed for suspect tactical and strategic reasons, and that it can and should be denied for these reasons alone."); *TV Communications Network, Inc. v. ESPN, Inc.,* 767 F.Supp. 1077, 1080-81 (D. Colo. 1991) ("The wait and see attitude of plaintiff militates against the bona fides of the Motion."); c*f. Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F.2d 710, 716 (7th Cir. 1986) (noting the movant's delay where the judge's husband's stock ownership was a matter of public record in May 1984 and the movant waited until July 1985 to file).

### B. § 455

Title 28 U.S.C. § 455 governs the disqualification or recusal of federal judges. Subsection (a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Congress enacted § 455(a) to "promote public confidence in the impartiality of the judicial process," *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 860 (1988), so that "what matters is not the reality of bias or prejudice but the appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). Accordingl*y*, the determination under § 455(a) is made on an objective basis, *see id.*; *see also Chase Manhattan Bank v. Affiliated FM Ins. Co.,* 343 F.3d 120, 127 (2d Cir. 2003) ("The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude."), and

---

[3] In *Polaroid Corp. v. Eastman Kodak Co.*, 867 F.2d 1415, (Fed. Cir. 1989), the Federal Circuit concluded with respect to § 455(b) that "concept of 'timeliness' merges into and is subsumed in the concepts of 'equity,' 'fairness,' and 'justice.'" *Id.* at 1418-19. After rephrasing the inquiry as one of "fundamental fairness," the court denied Kodak's motion, finding "[n]o basis in law, equity of fairness for giving Kodak an additional bite at the apple." *Id.* at 1421. In particular, it explained that "Kodak relies on the obvious and irrelevant in asserting 'there is no timeliness requirement under § 455(b),'" and, by asking the court to start all over after six and one-half years, "Kodak fails to note a distinction in the fairness quotient of prospective and retrospective remedies." *Id.* at 1420.

is committed to the Court's sound discretion. *In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litig.*, 601 F.Supp. 2d 1120, 1124 (D. Minn. 2009); s*ee also In re Certain Underwriter*, 294 F.3d 297, 302 (2d Cir. 2002) ("The discretion to consider disqualification rests with the district judge in the first instance.").

In contrast to § 455(a), which operates as a "catchall" provision, § 455(b) requires recusal in specific circumstances. *See In re Certain Underwriter*, 294 F.3d at 305. Recusal is required, for instance, when a judge knows that his spouse has a financial interest in a party to the proceeding. 28 U.S.C. § 455(b)(4). The statute defines a "financial interest" as an "ownership of a legal or equitable interest, however small." 28 U.S.C. § 455(d)(4). Thus, unlike the reasoned inquiry under § 455(a), the determination under § 455(b)(4) is mechanical. *See id.*; *New York City Development Corp. v. Hart*, 796 F.2d 976 (7th Cir. 1986). *See also Chase Manhattan Bank,* 343 F.3d at 127 ("Section 455(b)(4) embodies an actual knowledge test regarding the disqualifying circumstances and provides a bright line as to disqualification of a known financial interest in a party.").

In *Liteky* v. *United States*, the Supreme Court considered whether a limitation contained in the language of § 455(b)(1) similarly limits § 455(a).[4] In finding that the limitation in § 455(b)(1) applies to § 455(a), the Court explained that:

> § 455(a) expands the protection of § 455(b), but duplicates some of its protection as well-not only with regard to bias and prejudice but also with regard to interest and relationship. Within the area of overlap, it is unreasonable to interpret § 455(a) (unless the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b). It would obviously be wrong, for example, to hold that "impartiality could reasonably be questioned" simply because one of the parties is in the fourth degree of relationship to the judge. Section 455(b)(5), which addresses the matter of relationship specifically, ends the disability at the *third* degree of relationship, and that should obviously govern for purposes of § 455(a) as well.

*Id.* at 553-53. To the extent that the Government argues that the financial conflict of interest in *Shell* creates the appearance of partiality in *any* "directly related proceeding," it eliminates a limitation explicitly set forth in § 455(b)(4). Section 455(b)(4) requires disqualification when the judge "knows that he . . . or his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding." 28 U.S.C. § 455(b)(4). The Government does not argue that Judge Smith has a financial conflict of interest in the "subject matter in controversy" or in a "party to the proceeding." *Id.* Rather, the Government contends that Judge Smith's impartiality "might reasonably be questioned" based on his wife's stock ownership in a party to a "directly related proceeding." Def. Brief at 8. Thus, while recognizing that the circumstances in this case exceed the limitations contained in § 455(b)(4), the Government argues that recusal is required, nonetheless, by § 455(a) because the "directly related" cases involve "'similar contracts' and 'issues with substantial overlap" such that the "financial conflict of interest that tainted the *Shell* proceedings also would taint the *Exxon* proceedings." Def. Brief at 7. This

---

[4] The Court is unaware of any Federal Circuit or Court of Claims decision that interprets the relationship between § 455(a) and § 455(b)(4).

5

argument, however, is unavailing because it essentially asks the Court to adopt a *per se* rule that nullifies the limitations carefully drawn by Congress in § 455(b)(4), which, as the Supreme Court in *Liteky* suggests, is poor statutory construction. *See id.* at 553 n.2 ("when one of those aspects addressed in (b) *is* at issue, it is poor statutory construction to interpret (a) as nullifying the limitations (b) provides, except to the extent the text requires").

In reaching this conclusion, the Court is further persuaded by the fact that the determination under § 455(a) is not mechanical, but rather a reasoned consideration of all the facts, requiring the judge to "carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *In re Drexel Burnham Lambert*, 861 F.2d 1307, 1312 (2d Cir. 1988). Accordingly, courts have declined to find that recusal is necessary under § 455(a) based on conclusory allegations of partiality. *See, e.g., In re Medtronic,* 601 F.Supp. 2d at 1125-26 ("Plaintiffs are required to offer proof of partiality"); *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F.Supp. 1077, 1080 (D. Colo. 1991) ("Conclusory allegations do not mandate recusal under § 455. A judge need not recuse on unsupported, irrational, or highly tenuous speculations and should ignore innuendos, and erroneous information."). Similarly, courts have been reluctant to use § 455(a) to expand the scope of § 455(b) by finding an appearance of partiality where the circumstances fall short of § 455(b), and the party does not offer additional facts to support recusal under § 455(a). *See In re Medtronic*, 601 F.Supp. 2d at 1128 (declining to find an appearance of partiality where "[p]lantiffs' argument for recusal under Section 455(a) largely parrots their argument under 455(b) . . . [p]laintiffs offer nothing more than 'the gossamer strands of speculation and surmise' to support it."); *United States v. Ibarra-Castaneda*, 396 F.Supp. 2d 1004 (N.D. Iowa 2005) (rejecting Defendant's argument that recusal is required under either § 455(b)(4) or § 455(a) where husband held a financial interest in Wells Fargo, a non-party, and "[t]he argument for recusal merely concerns a collateral consequence of sentencing Defendants.").

The Government argues that *In re International Business Machines Corp.*, 45 F.3d 641 (2d Cir. 1995) supports its position that the financial conflict of interest in *Shell Oil* creates a reasonable basis for questioning Judge Smith's impartiality in directly related cases. In that case, however, the circumstances requiring recusal in the related case were equally applicable to the pending action. In *IBM* the judge's rulings and extra-judicial conduct in the related case established the appearance of bias towards the parties to the action presently before the judge. In contrast, the allegation of partiality in this case is remote, resting on the speculation that the outcome will have collateral consequences upon Chevron's financial interests. An argument that the decision of *Shell* totally nullifies.

In *In re Merrill Lynch,* the court similarly found such an argument "so attenuated and remote that they simply do not give rise to an appearance of partiality under § 455(a). . . ." 305 F.Supp. 2d at 326. In that case, the plaintiff argued that the district court judge's financial interest in Citigroup, Inc. and Lehman Brothers, Inc., two non-parties, required his recusal from the proceeding because the companies were defendants in related proceedings before another district court judge in the same court. In rejecting the plaintiff's argument the district judge observed that the "[p]laintiff's speculation that reasonable people might believe that 'I would decide issues in a case before me in a particular way in hopes of persuading a different judge

presiding over a separate case to reach the same decision,' is undeserving of any credence." *Id.* at 326-27. *Cf. In re Kansas Public Retirement System*, 85 F.3d 1353, (8th Cir. 1996) ("a rule requiring judges to recuse themselves from all cases that might remotely affect nonparty companies in which they own stock. . . would paint with too broad a stroke"); *Drexel*, 861 F.2d at 1315. (cautioning that recusal based on remote, contingent, or speculative interests "would grant litigants the power to veto the assignment of judges. . . [and] carry a worthy policy too far.").

Other courts have similarly held that financial interests in non-parties are too remote to require recusal. In *Ibarra-Castaneda*, the defendants argued for the district court judge's recusal based on her husband's financial interest in Wells Fargo, a non-party to the proceeding. 396 F.Supp. 2d at 1007. In that case, the defendants had guaranteed commercial loans held by Wells Fargo. Thus, the defendants argued that a conflict existed because if sentenced Wells Fargo could deem itself unsecured and foreclose on its loans. The district judge determined that "a reasonable observer would not believe the undersigned would alter her sentences in order to benefit her husband financially," emphasizing her husband's "relatively minute" ownership interest in Wells Fargo and negligible impact of the defendants' loans on a "very large corporation with a net worth in the billions." *Id.* Similarly, in *In re Medtronic*, the district judge rejected plaintiffs' argument that the defendant, represented by his son's law firm, would "steer its legal businesses elsewhere in the event the Court were to rule against it," noting that "it seems particularly unlikely that any ruling the Court might make in this case, whether favorable or unfavorable to Medtronic, would have an impact on the quantum of business the firm receives." 601 F.Supp. 2d at 1126.

In this case, Judge Smith's wife's ownership in Chevron is relatively small. In *Shell*, the Federal Circuit emphasized that "there is neither an allegation nor suggestion that the judge was unduly influenced by his wife's financial interest, which nobody argues was substantial." *Shell Oil v. United States*, 672 F.3d at 1291. It further observed that § 455(b)(4) "does not require as much – it simply requires recusal whenever financial conflicts of interest exist, regardless of whether those conflicts affect the outcome of the case." *Id.* In *Chase*, the court explained that Congress provided this bright-line test to protect federal judges—"[a]s Congress has observed, in the absence of bright-line rules, judges are forced to decide the extent of their financial interest at their 'peril. . . .'" *Chase Manhattan Bank*, 343 F.3d at 128. It thus conceded that this "bright-line test is, as to actual partiality, more than a little overbroad," *id.*, and that "[n]ot every appearance of a violation of Section 455(b)(4) creates a disqualifying interest under Section 455(a). Judges may preside over cases in which they appear disqualified but do so only in a very technical sense." *Id.* at 129. Accordingly, while the size of the financial interest is immaterial for purposes of § 455(b)(4), it may be considered under § 455(a), especially, where, as here, the interest is in a non-party.

Judge Smith's wife's interest in Chevron is not only small, but also very unlikely to be influenced by the outcome of this case. Judge Wheeler recently ruled against the oil companies in *Shell* with respect to liability. So any theoretically possible effect on *Shell* is no longer even possible. In addition, the remaining issues in this case are distinct from the remaining issues in *Shell*, making the possibility that the outcome of this proceeding could have any impact on

7

Chevron's financial interests and thereby alter the value of Judge Smith's wife's stock even more remote.

Assuming that *Shell* was not decided, the Eighth Circuit rejected a similar argument in *In re Kansas Public Retirement System*, 85 F.3d 1353 (8th Cir. 1996). In that case, the plaintiffs argued that the district court judge should have disqualified himself from the action based on his stock ownership in the parent company of a non-party, Boatman. Boatman had filed a motion to intervene, but, because of his financial interest, the judge disqualified himself from presiding over the motion. Boatman's motion was stayed, prompting Boatman to file a related action in the same court. Plaintiffs argued, nonetheless, that recusal was necessary because there were overlapping issues involved and the judge's ruling could have a preclusive effect or be cited as persuasive authority in Boatman's related action. The Eighth Circuit rejected this argument finding, with respect to the collateral estoppel theory, that Boatman did not assert this theory and the judge presiding over that action could come to a contrary conclusion. *In re Kansas Public Retirement Sysstem* at 1362. In this case, Judge Wheeler was also free to come to a contrary conclusion—and did. The Eighth Circuit also rejected plaintiffs' argument that the ruling could be cited as persuasive authority in the Boatman action. The court noted that "this speculation [that the judge would decide issues in a case in the hopes of persuading a different judge to reach the same decision] would not be based on any identified, remaining overlapping issue." *Id.* In this case, the Government has similarly failed to identify any remaining overlapping issue.

The Government's reliance on Federal Circuit's reasoning in *Shell* is similarly misplaced. The language quoted by the Government relates to the Federal Circuit's determination of the appropriate remedy—after it determined that recusal was required under § 455(b)(4). In *In re Kansas Public Retirement System*, the Court held:

> we are reluctant to fashion a rule requiring judges to recuse themselves from all cases that might remotely affect nonparty companies in which they own stock. We believe such a rule would paint with too broad a stroke. By way of example, a judge holding stock in General Motors should not have to recuse from a case involving Ford Motor Company because some ruling he may make might be used as persuasive authority in a case against GM . . . As a general matter, the administratively daunting task of identifying such tangential "interests" outweighs any benefit of eliminating the remote possibility of consequential bias.

*Id.* at 1362. This court similarly finds that Shell cannot be read for the proposition that the interest at issue here creates a conflict of interest that mandates recusal under the statute. The case at hand involves a different fact pattern, and different parties than that in the *Shell* matter. Additionally, there is no interest in ExxonMobil being held by the judge or his wife. Thus there is no conflict of interest requiring recusal.

### III. Conclusion

For the reasons set for above, the Court hereby **DENIES** Defendant's Motion for Recusal.

**It is so ORDERED.**

s/ Loren A. Smith
LOREN A. SMITH,
Senior Judge