**POLAROID CORPORATION,**
**Plaintiff–Respondent,**

v.

**EASTMAN KODAK COMPANY,**
**Defendant–Petitioner.**

**No. 88–1616.**

United States Court of Appeals,
Federal Circuit.

Feb. 17, 1989.

Herbert F. Schwartz, of Fish & Neave, New York City, argued for plaintiff-respondent. Of counsel, were Kenneth B. Herman, Edward F. Mullowney, Patricia A. Martone and Robert J. Goldman, of Fish & Neave, New York City. Also on the brief, was Geoffrey C. Hazard, Jr., of New Haven, Conn.

Richard E. Carlton, of New York City, argued for defendant-petitioner. Of coun-

---

sel, were Richard H. Klapper, Robert A. Sacks and Karen Patton Bogle, of Sullivan & Cromwell, New York City. Also on the brief, was Robert S. Frank, Jr., of Choate Hall & Stewart, Boston, Mass.

Before MARKEY, Chief Judge, NEWMAN and MAYER, Circuit Judges.

MARKEY, Chief Judge.

Appeal from an order of the United States District Court for the District of Massachusetts (Mazzone, J.), No. 76–1634, denying Eastman Kodak Company's (Kodak) motion to "vacate all orders entered by Judge Zobel in this action from October 4, 1981 to date."[1] We affirm.

## BACKGROUND

On 26 April 1976, Polaroid Corporation (Polaroid) sued Kodak for infringement of ten Polaroid patents relating to its integral instant camera and film system.[2] On 6 October 1981, after extensive pleading, counterpleading, and discovery, trial commenced on liability issues relating to those ten patents. At the very outset, Judge Zobel announced:

> Before we begin, I should tell you that I have a mother-in-law problem. It is not the sort that Ann Landers would be interested in. But I learned yesterday that my mother-in-law owns a thousand shares of Kodak stock. She has been a stockholder of Kodak for some 50 years. I do not find this as disqualifying and at this point will proceed to hear the case.

On 11 October 1985, the court issued what it called a final judgment on the claims tried. Both parties sought and received certification under Fed.R.Civ.P. 54(b) that there was no "just reason for delay with respect to the entry of a judg-

ment on these ten patents." In its appeal from that judgment, Kodak listed six errors and proffered eighteen arguments in an attempt to show that the court's findings and conclusions were "fatally flawed by systemic legal errors." 789 F.2d at 1559.

After this court affirmed the judgment and the Supreme Court denied certiorari, the case returned to the district court for assessment of damages on the claims decided and for trial on the remaining claims. Judge Zobel presided over another two years of discovery on damages and conducted ten pretrial conferences.

On 9 May 1988, Judge Zobel held another pretrial conference. At that time she informed counsel that her mother-in-law had died, that she could not continue to preside over the case, and that she was *sua sponte* disqualifying herself because she was a legatee and her husband was executor of the estate.

Counsel for both sides expressed a desire to waive any objection to her participation. Judge Zobel nonetheless stated that disqualification was mandatory and unwaivable. At the request of counsel, however, she agreed to delay her formal disqualification while counsel conducted research for support of their desire that she participate. She took no action in the case after 9 May 1988.

Kodak reversed its earlier position that it could waive her disqualification. Instead of merely informing Judge Zobel of that change and allowing her announced disqualification to be formalized, Kodak filed on 15 June 1988 an unnecessary motion requesting her disqualification.[3] Thus for the *first* time, six and one-half years after Judge Zobel disclosed on the record her mother-in-law's interest and stated her determination that it was not disqualifying,

1. At Kodak's request, the district court certified its order for immediate appeal. *See* 28 U.S.C. §§ 1292(c)(1), 1292(b). By order dated 12 September 1988, this court granted Kodak's petition for permission to appeal.

2. A full explanation of those patents can be found in the district court's memorandum decision on the liability issues. 641 F.Supp. 828, 228 USPQ 305 (D.Mass.1985), *aff'd,* 789 F.2d

1556, 229 USPQ 561 (Fed.Cir.1986), *cert. denied,* 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114.

3. Exemplifying the adage that "no good deed ever goes unpunished," Kodak's brief leads the reader uninformed of the record to believe Judge Zobel disqualified herself only in response to Kodak's motion.

Kodak saw what it hoped would be a basis for her disqualification. Seizing on that basis, Kodak moved at the same time that Judge Zobel vacate all orders she had entered after 4 October 1981, arguing that her participation after that date contravened 28 U.S.C. § 455(b)(5)(iii) and that her disqualification could not be waived. *See* 28 U.S.C. § 455(e).

On 21 June 1988, Judge Zobel disqualified herself *nunc pro tunc* effective 9 May 1988. She did not rule on either of Kodak's motions. The case was reassigned to Judge Mazzone.

On 11 August 1988, Judge Mazzone heard argument on Kodak's motion to vacate the orders and denied the motion.[4] Judge Mazzone stated in his opinion from the bench:

> While [Judge Zobel] was in a position to determine the case in favor of either [party], or [though] she was able to determine the case in such a way that ... stockholders in either company would have been affected, she said she did not believe that to be so.... Perhaps it was the amount of stock which is insubstantial and insignificant in amount in comparison to the outstanding stock,[5] or [perhaps it was] the uncertainty of the outcome....
>
> ... [S]he said she did not believe [her mother-in-law's stock in Kodak was] a disqualifying reason. And I don't think that she was incorrect.

Judge Mazzone also said that "[a] modest amount of Eastman Kodak's revenues are involved, I'm informed in the Schwartz affidavit, and I have nothing to controvert that." The Schwartz affidavit indicated that "instant photography accounted for 1.3 to 5.1% of Kodak's total sales in the years 1976 to 1985."

Further, Judge Mazzone noted that: (1) Kodak had been aware of the mother-in-law's interest for six and one-half years, through trial, appeal, and subsequent proceeding, and had never suggested that her participation violated section 455 (indicating that "Kodak had agreed" with Judge Zobel's conclusion); (2) "[w]itnesses have aged [and] memories have faded;" (3) liability was "tried long ago in a long complex exhausting effort by all parties" and the judgment on liability was appealed from and affirmed; and (4) "years and years have gone by." In light of those factors, and citing the Supreme Court's recent guidance in *Liljeberg v. Health Services Acquisition Corporation*, —— U.S. ——, 108 S.Ct. 2194, 2203–2204, 100 L.Ed.2d 855 (1988), Judge Mazzone concluded that:

> [U]nder these circumstances, I cannot find that it is the law that Eastman Kodak obtains a vacation of this case up to this point. I do not think that would be fair, nor do I think it would be equitable to everyone. It simply gives Eastman Kodak another trial and that would not be, in my judgment, the sensible and fair outcome of this case.

Finally, Judge Mazzone stated that "I believe Rule 60(b) applies, and Eastman Kodak is barred from obtaining a vacation of these orders...."

## ISSUE

Whether the district court abused its discretion in denying Kodak's motion to vacate Judge Zobel's orders.[6]

## OPINION

Kodak's appeal is from Judge Mazzone's denial of its motion to vacate Judge Zobel's previous orders. That denial rested on three grounds: (1) Judge Zobel correctly

---

4. Appropriately, Judge Mazzone "marveled" at the work Judge Zobel did in the liability phase of the case. This court's earlier opinion expressed a similar sentiment. 789 F.2d at 1557, 229 USPQ at 562.

5. The record does not reveal the total number of outstanding shares of Kodak stock in 1981. At oral argument, however, counsel for Kodak estimated the number at 162.5 million.

6. Focusing on Judge Zobel's 1981 determination that disqualification was not required, Kodak argues that the question is one of statutory interpretation and that the statute provides for no discretion in making that determination. As set forth in text, the appeal is from Judge Mazzone's denial of Kodak's motion to vacate, not from Judge Zobel's determination of non-disqualification.

determined that her mother-in-law's interest was not disqualifying; (2) the motion is barred because Judge Zobel's orders were "final" and not within Rule 60(b); and (3) to vacate Judge Zobel's orders now would be inequitable and unfair. Because we find the last fully adequate to reflect the absence of abuse of discretion by Judge Mazzone, we need not, and for that reason alone do not, address grounds (1) and (2).[7]

■ Vigorously and strenuously, Polaroid argues for and Kodak argues against a "timeliness requirement" applicable to 28 U.S.C. section 455(b). Both arguments are analytically flawed. Application of a "timeliness" requirement requires a fixed point or bench mark from which the timeliness or untimeliness of an action can be measured (*e.g.* 10 days after event *X;* before event *Y*). There is no such provision anywhere in section 455. Nor could there be. The statute deals only with action of a judge. It has nothing to do with actions of counsel. Actions to disqualify a judge are provided for in 28 U.S.C. § 144,[8] which does contain the required bench mark (10 days before the beginning of term or good cause if later).

Kodak argues the present appeal as though it had been filed in 1981 to challenge Judge Zobel's determination of non-disqualification. Kodak did not seek to disqualify Judge Zobel under § 144.[9] But

whether Judge Zobel should have disqualified herself in 1981 is irrelevant. Judge Zobel is now disqualified, Judge Mazzone is presiding, and, as above indicated, the present appeal is solely from Judge Mazzone's denial of Kodak's motion to vacate all of Judge Zobel's orders issued since 1981. Though Judge Mazzone referred to the passage of six and one-half years, he did not simply dismiss Kodak's motion as "untimely." On the contrary, he fully considered the motion and set forth his reasons for denying it.

Thus the question before us is neither the correctness nor incorrectness of Judge Zobel's determination of non-disqualification, nor the mere timeliness or untimeliness of Kodak's raising that question as support for its motion to vacate; the question before us, simply stated, is one of fundamental fairness. A motion to vacate an order of a judge alleged to have violated § 455(b) necessarily occurs after the date of the alleged violation. There being no statute or rule limiting the time within which such motion may be filed, its filing cannot properly be described as either "timely" or "untimely." The passage of time is merely one factor and events preceding the motion require equal if not greater consideration. Thus the concept of "timeliness" merges into and is subsumed

7. That we do not unduly lengthen this opinion with an unnecessary discussion of grounds (1) and (2) cannot, of course, be viewed as indicating either disagreement or agreement therewith. We note, however, that our decision here, where Judge Zobel made her § 455 determination on the record before trial, cannot encourage judges to treat lightly the thrust of § 455.

8. 28 U.S.C. § 144 reads:
Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause

shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

9. Section 144 deals with an affidavit to disqualify a judge for bias or prejudice. There is no evidence, nor does Kodak suggest, nor could it, that Judge Zobel was biased or prejudiced, or for any reason failed to conduct a fair trial. Because 455(b) may be viewed as presuming bias or prejudice when any of its listed circumstances are present, it is arguable that the timeliness provisions of § 144 should apply to efforts to disqualify based on those circumstances. As indicated in the text, we do not here deal with an effort to disqualify, or with the timeliness thereof, but merely note the tendency to refer to § 144 in some of the cases dealing with § 455. *See, e.g., United States v. Conforte*, 624 F.2d 869, 879 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

in the concepts of "equity", "fairness", and "justice." [10]

We recognize, as we must, that courts have spoken in terms of a "timeliness requirement" in cases like the present. Analysis reveals, however, that efforts to undo the work of judges allegedly disqualified have been deemed "untimely" for having been initiated at a wide variety of "times." *See, e.g., Kelley v. U.S.*, 712 F.2d 884, 887–88 (1st Cir.1983) (three months after party learned of basis for disqualification); *In re International Business Machines Corp.*, 618 F.2d 923 (2d Cir.1980) (before judgment, but after seven and one-half years of pre-trial and trial effort); *United States v. Conforte*, 624 F.2d at 879 (learned facts pretrial, made motion post-trial).

The refusal of courts to "start over" has rested not on the mere passage of time, but on the events that had occurred and the balancing of equity/fairness considerations in deciding whether to expunge those events from history's pages. In deciding motions to vacate orders issued by an allegedly disqualified judge, the courts have used "untimely" as a synonym for "unfair" when the circumstances, like those present here, are such that a grant of the motion would produce a result inequitable, unjust, and unfair. "It is therefore appropriate to vacate the judgment unless it can be said that respondent did not make a timely request for relief, or that it would *otherwise* be unfair to deprive the prevailing party of its judgment." *Liljeberg*, 108 S.Ct. at 2206 (emphasis added).

For example, the First Circuit, whose decisions guide us here,[11] stated in *Kelley* that untimeliness was a sufficient reason to deny Kelley's motion based on reasons for disqualification Kelley had failed to mention for three months while prosecuting three other motions. In *In re United Shoe Machinery Corp.*, 276 F.2d 77, 79 (1st Cir. 1960) the court said one knowing of a ground for disqualification "cannot be permitted to wait and decide he likes subsequent treatment that he receives" and that in preventing abuse "the requirement of timeliness is of fundamental importance." (Quoted by the district court in *United States v. Kelly*, 519 F.Supp. 1029, 1050 (D.Mass.1981).) [12]

The First Circuit is not alone among the circuits imposing a "timeliness requirement" in the 455(b) context. *See e.g. Ogala Sioux Tribe v. Homestake Min. Co.*, 722 F.2d 1407, 1414 (8th Cir.1983); *In re International Business Machines*, 618 F.2d at 932 (2d Cir.); *United States v. Conforte*, 624 F.2d at 879 (9th Cir.); *see also Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1164 n. 3 (5th Cir.), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1982); *but see e.g. United States v. Gipson*, 835 F.2d 1323, 1324 (10th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 2038, 100 L.Ed.2d 623 (1988); *United States v. Slay*, 714 F.2d 1093, 1094–95 (11th Cir.), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1983). If it were necessary to speak of a "timeliness requirement," the circumstances of the present case form a far more compelling basis for imposing such a requirement than any appearing in the cited cases.

*All States Plastic Mfg. Co.*, 744 F.2d 1564, 1572–76, 223 USPQ 465, 469–72 (Fed.Cir.1984); *Atari, Inc. v. JS & A Group, Inc.* 747 F.2d 1422, 1438–40, 223 USPQ 1074, 1086–88 (Fed.Cir.1984) (in banc).

**10.** There is no rule governing the time within which a motion may be brought to vacate an order issued by an allegedly disqualified judge, yet the major source of the Rules remains available and is applied here. "The underlying philosophy of, and procedural choices embodied in, the Federal Rules were almost universally drawn from equity rather than the common law." Weinstein, *The Ghost of Process Past*, 54 Brooklyn L.Rev. 1, 4 (1988).

**11.** Because a motion to vacate based on an alleged disqualification of a trial judge is unrelated to patent law, we follow the guidance of the regional circuit in which the district court sits, here the First Circuit. *See Panduit Corp. v.*

**12.** There is no relation between Kelley and Kelly, or between the cited cases bearing those names in their captions. That the courts of the First Circuit consider a "timeliness" factor in criminal trials, when the delay in raising a disqualification question was a matter of months, further confirms the view that it would do so in this civil case, where the delay was six and one-half years.

Because the conduct of the movant is a factor in the equity/fairness equation, Judge Mazzone noted that for six and one-half years, through trial, appeal, denial of certiorari, and several years of discovery on the damages phase, Kodak knew of Judge Zobel's position and remained silent. Obviously an objection by Kodak in 1981, and a mandamus petition if its objection were overruled, would have avoided any problem. *See* Fed.R.Civ.P. 46. Even after Judge Zobel announced in 1988 that she had become a legatee, that she was disqualifying herself, and that disqualification was not waivable, Kodak objected to her disqualification and requested time to research a basis for that objection. Presuming, mistakenly, that those considerations meant that its motion had been denied only as "untimely", Kodak relies on the obvious and irrelevant in asserting "there is no timeliness requirement under § 455(b)."

█ Arguing for an immortal disqualification,[13] Kodak would have us disregard all that has happened during the six and one-half ensuing years and all that Judge Mazzone had to say about Kodak's acquiescence, aging of witnesses, fading of memories, and the unfairness of vacating Judge Zobel's orders and requiring Polaroid to start all over. Kodak fails to note a distinction in the fairness quotient of prospective and retrospective remedies. *See Health Services Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 801 (5th Cir.1986), *aff'd*, — U.S. —, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *In re Cement and Concrete Litigation*, 515 F.Supp. 1076 (D.Ariz.1981) (acknowledging difference between prospective disqualification and vacating past actions), *mandamus denied*, 688 F.2d 1297 (9th Cir.1982), *aff'd for lack of a quorum*, — U.S. —, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The district court's opinion was cited with approval in *Liljeberg*, 108 S.Ct. at 2203 n. 9.

█ Thus assuming, solely for the purposes of this opinion, that Judge Zobel should have disqualified herself in 1981, the Supreme Court has provided the test to be applied, stating in *Liljeberg*, 108 S.Ct. at 2203:

Although § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty. Congress has wisely delegated to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation.... We conclude that in determining whether a judgment should be vacated for a violation of § 455, it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

Applying the Court's guidance in *Liljeberg* to the facts of this case, the risk of injustice to the parties weighs far more heavily on Polaroid's side of the scales; there is little or no risk of injustice in other cases, the present denial resting on the specific facts of this case; and the public's confidence in the judicial process is less likely to be undermined when its result is adhered to in repose, and would be more likely to be undermined if the law were to countenance a sundering of the result six and one-half years later on grounds other than the merits.[14]

Kodak argues that *Liljeberg* dealt with § 455(a), not 455(b). The argument is meritless, the Supreme Court having made no such distinction in outlining the test to be

---

**13.** Contrary to Kodak's arguments, Congress did not intend that a violation of § 455 should in itself and automatically deprive the judge of jurisdiction. "Congress has wisely delegated to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation." *Liljeberg*, 108 S.Ct. at 2203.

**14.** In *Liljeberg*, the movant first learned of a basis for disqualification ten months after the appeal had been decided, and moved immediately to vacate the judgment under Rule 60(b)(6), which may be contrasted with the conduct of the present movant who was told the facts by the district court at the outset of trial and moved to vacate after six and one-half years of silence and the conduct of the full judicial process.

used in deciding whether to vacate "for violation of § 455." Though the First Circuit has not had occasion to speak of the differences between sections 455(a) and 455(b), we are confident it would find persuasive, as would we, the Eleventh Circuit's discussion in *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir.1988), in which the court applied *Liljeberg* to 455(b) in the very context involved here. After concluding that differences between sections 455(a) and 455(b) did not "preclude the application of harmless error analysis in the context of a 455(b) violation,"[15] the court said:

> We believe that this conclusion is supported by the Supreme Court's *Liljeberg* decision. When the Supreme Court outlined the test for determining whether a judgment should be vacated due to a § 455 violation the Court did not draw any distinctions between § 455(a) and § 455(b). Further, in the sentence immediately preceding its test to be used when evaluating the appropriate remedy for a § 455 violation the Court stated: "Rule 60(b)(6) relief is accordingly neither categorically available nor categorically unavailable for *all* § 455 violations."

*Id.* at 1527–28 (citations omitted) (emphasis in original).

Kodak's argument that *Liljeberg* applies only to motions to vacate final judgments under Fed.R.Civ.P. 60(b)(6) is equally meritless. As recognized in *Parker*, the Court was speaking of the appropriate remedy for a section 455 violation. The governing principles of equity and fairness are not affected by the label attached to that sought to be vacated. *See In re International Business Machines*, 618 F.2d at 932–34 (denied motion made before judgment on merits).

## CONCLUSION

No basis exists in law, equity or fairness for giving Kodak an additional bite at the apple. It availed itself fully of the judicial process through a fair and complete trial and a full consideration of its arguments on appeal and in its petition for certiorari.

15. *See* Fed.R.Civ.P. 61.

It failed to establish invalidity of Polaroid's patents and was found to have infringed those patents. In light of the factors enunciated in *Liljeberg* and the particular facts of this case listed by Judge Mazzone, we agree with his refusal to "find that it is the law that Eastman Kodak obtains a vacation of this case up to this point" and with his view that a grant of Kodak's motion would not produce a "sensible and fair outcome of this case." Accordingly, the denial of Kodak's motion is affirmed.

AFFIRMED.